

Signed/Docketed
October 16, 2014

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
# The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 13-30740 MER |
| EFUSION SERVICES, LLC ) | |
| ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## ORDER

The issue before the Court is whether the above-captioned Chapter 11 case was filed in good faith, and if not, whether the case should be dismissed or converted. The Court has reviewed the evidence and legal argument presented by the parties, and hereby makes the following findings and conclusions.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), as it concerns the administration of the estate.

## BACKGROUND FACTS

On December 31, 2012, John Dorsey ("Dorsey") and Thomas McCann ("McCann") as sellers, and Debtor eFusion Services, LLC ("eFusion"), as purchaser, executed a Stock Purchase Agreement ("SPA").[1] Pursuant to the SPA, Dorsey and McCann sold six companies (the "EPS Entities")[2] to eFusion for a purchase price of $35 million, subject to certain adjustments. Most significantly, the SPA gave minority ownership interests in eFusion to Dorsey, McCann, and the EPS Entities' manager, Anthony Maley ("Maley").[3]

---

[1] Debtor's Exhibit E.

[2] The EPS Entities are 1) Electronic Payment Systems, LLC, 2) Electronic Payment Transfer, LLC; 3) FlexPay, LLC; 4) First Merchant Platinum, Inc.; 5) Access-Now.Net, Inc.; and 6) Elect-Check, Inc.

[3] To assist them in selling the EPS Entities, Dorsey and McCann had engaged Company Broker Group, LLC. Company Broker Group is the plaintiff in the state court to which this Order refers.

In addition, on December 31, 2012, Dorsey, McCann, and eFusion executed a Termination and Rescission Agreement (the "Rescission Agreement")[4] and an Interim Management Agreement ("IMA").[5] Pursuant to the IMA, Dorsey and McCann retained their positions as managers and operators of the EPS Entities. In addition, Maley remained chief operating officer of the EPS Entities.

Two secured promissory notes (the "Notes"), each in the amount of $13,700,000, were executed by eFusion, as partial payment of the purchase price for the EPS entities.[6] The maturity date of the Notes was February 28, 2013, but this date was extended to October 15, 2013, under the terms of a Global Extension Agreement dated May 31, 2014.[7] No payments on the Notes or any other payment under the SPA were made by eFusion. On November 1, 2013, Maley sent a email to Paul Lufkin ("Lufkin")[8] indicating, *inter alia*, October 15, 2013 signaled the termination of the sale relationship.[9]

eFusion filed its Chapter 11 petition on December 20, 2013. On January 13, 2014, eFusion filed Adversary Proceeding No. 14-1029 MER against McCann

---

[4] Movants' Exhibit 5. Pursuant to this agreement:

Upon Sellers providing written notice to Purchaser that the Secured Promissory Notes dated December 31, 2012 or either of them are not paid pursuant to their terms or are otherwise breached on or before February 28, 2013, the Stock Purchase Agreement, all ancillary agreements related thereto, and all other documents executed as part of the sale of the Companies. . . shall be cancelled, and become null and void and of no effect as if they had never been entered into or executed without the necessity of further action by Sellers or Purchaser.

*Id.*, ¶ 1. In addition, the agreement provides the notice required may be provided by electronic mail to Mr. Lufkin.

[5] Movants' Exhibit 3.

[6] Movants' Exhibit 2.

[7] Movants' Exhibit 6. The maturity dates had been extended several times before the Global Extension Agreement. The Global Extension Agreement states the February 28, 2013 date in the Termination and Rescission Agreement is changed to read October 15, 2013.

[8] Lufkin is the manager of eFusion Management, LLC ("eFusion Management"), an entity that is in turn the manager of eFusion.

[9] Movants' Exhibit 7. The effect of this communication on the parties' dispute is part of the matter from which the Court has abstained and the Court expresses no opinion about it.

and Dorsey.  The sole claim for relief requested turnover of the books and records of the EPS Entities, and an accounting and turnover of profits of the EPS Entities.  On April 2, 2014, the Court found that permissive abstention was appropriate and dismissed the Adversary Proceeding.[10]

On January 30, 2014, Dorsey, McCann and Maley (the "Movants") filed their Motion to Dismiss, asserting this bankruptcy case was filed solely as a litigation tactic in the dispute between eFusion, and Dorsey and McCann as to the ownership of the EPS Entities.  Dorsey and McCann assert they are the owners of the EPS Entities pursuant to the Rescission Agreement, the Global Extension Agreement, and the November 1, 2013, e-mail from Maley.  According to the Movants, the case should be dismissed under 11 U.S.C. § 1112(b) or § 305(a).[11]

eFusion contends the SPA contained an integration clause, thereby rendering the Rescission Agreement ineffective.  eFusion alleges it should be allowed to exercise ownership rights over the EPS Entities, as it intends to merge the EPS Entities and propose a plan of reorganization.

## DISCUSSION

### A.   Dismissal Under § 1112

Section 1112 provides:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

---

[10] Recently, the parties filed status reports as to the conduct of the state court litigation involving the Companies and Company Broker's Group, which arranged the sale.  EFusion and Dorsey, McCann and Maley disagree as to whether allowing the Company Broker's Group to amend its complaint to add eFusion as a defendant, followed by the filing of cross-claims and counterclaims, brings the issue of ownership of the Companies properly before the Denver District Court.  However, having reviewed the status reports and the state court pleadings, this Court agrees the Motion to Dismiss may be determined on the evidence provided without the need for a resolution of the ownership issue by the state court.

[11] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

"Bad faith" is not specifically included in the "causes" listed in § 1112(b)(4). However, "[a]lthough a debtor's bad faith in filing a petition is not an enumerated ground for dismissal under § 1112(b), courts have overwhelmingly held that proof of such an allegation may be 'cause' for dismissal."[12] This Court has previously noted:

> Findings of bad faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and are based on multiple factors rather than on any single event. In this Circuit, several factors have been identified which support a finding of a bad faith filing in a Chapter 11 case: 1) the debtor has only one asset; 2) the debtor has only one creditor; 3) the debtor acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; 4) the debtor was revitalized on the eve of foreclosure to acquire the insolvent property; 5) the debtor has no ongoing business or employees; 6) the debtor lacks a reasonable possibility of reorganization; and 7) the Chapter 11 filing stopped the foreclosure. Individual factors, in and of themselves, may not lead to a conclusion that a bankruptcy filing is in bad faith. Bad faith exists when the cumulative effect of these individual factors, viewed in the totality of the circumstances, paints a factual picture leading to the inescapable conclusion that use of the bankruptcy laws by the debtor is inappropriate.[13]

In addition, "a valid purpose for reorganization is necessary in order to conclude that the debtor's petition was affirmatively filed in good faith."[14]

---

[12] *In re Muth*, 2014 WL 1712527, at *5 (10th Cir. BAP May 1, 2014) (Table) (internal quotation marks omitted) (quoting *In re First Assured Warranty Corp.*, 383 B.R. 502, 543 (Bankr. D. Colo. 2008), and citing *In re Pac. Rim Invs., LLP*, 243 B.R. 768, 772 (D. Colo. 2000); *In re G3 Marina Adventures L.L.C.*, No. 10–81266, 2010 WL 4736212, at *3 (Bankr. E.D. Okla. Nov. 16, 2010); *and In re Melendez Concrete*, Inc., No. 11–09–12334, 2009 WL 2997920, at *3 (Bankr. D.N.M. Sept. 15, 2009)).

[13] *In re Walck*, 2012 WL 2918492, at *5 (Bankr. D. Colo. July 17, 2012) (Slip Copy) (citing *In re Nursery Land Development, Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996); *In re Plumberex Specialty Products, Inc.*, 311 B.R. 552, 560 (Bankr. C.D. Cal. 2004); *In re Gunnison Ctr. Apts.*, 320 B.R. 391, 400 (Bankr. D. Colo. 2005); *In re Kasdorf*, 64 B.R. 294, 295 (Bankr. D. Colo. 1986)).

[14] *See NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.,)* 384 F.3d 108, 129 (3rd Cir. 2004) ("To be filed in good faith, a petition must do more than merely invoke some distributional mechanism in the Bankruptcy Code. It must seek to create or preserve some value that would otherwise be lost-not merely distributed to a different stakeholder-outside of bankruptcy.); *In re Springs*

    *1.    eFusion has essentially only one asset or group of related assets.*

In this case, eFusion claims the EPS Entities as individual assets. However, the Court notes they are related entities which Lufkin has testified eFusion intends to merge into one entity. For these reasons, the Court finds they may be seen as one asset or group of related assets for purposes of § 1112(b). In addition, the parties' dispute over ownership of the assets has not been resolved in the state court. Thus, from another perspective, it could be found eFusion's only significant asset is a claim in state court litigation.[15] Accordingly, this factor weighs in favor of a finding of bad faith, or is at least, neutral.

    *2.    eFusion has a single significant creditor or pair of creditors.*

eFusion's Schedules list approximately $27 million in secured debt, consisting of the following: 1) $13.7 million owed to Dorsey; 2) $13.7 million owed to McCann; and 3) $7,500 owed to Wilcor Development, LLC for a loan to pay the retainer to eFusion's attorney. In addition, eFusion lists general unsecured debt of $1.125 million owed to ReliaSource, LLC ("ReliaSource") for "transaction fees," and $94,685 for legal services and consulting fees. ReliaSource is owned solely by Lufkin's wife, and Lufkin is the manager of ReliaSource. Thus, the amounts owed to non-insiders are minute compared to eFusion's own calculation of the amount it owes to Dorsey and McCann. Therefore, the Court finds this factor weighs in favor of finding bad faith.

    *3.    The case is a two-party dispute.*

eFusion raises numerous issues in connection with its decision to file its Chapter 11 petition. It asserts, for example, the Rescission Agreement is invalid,[16] the value of the EPS Entities is less than the purchase price in the SPA,

---

*Hospitality, Inc.*, 2006 WL 2458679, at *3 (Bankr. D. Colo. Aug. 22, 2006) (Not Reported in B.R.) (citing *Integrated Telecom*).

[15] Further, this case may be viewed in a similar fashion to a case where a debtor owns many lots in a single real estate development project. *See In re Sterling Bluff Investors, LLC*, ___B.R.___, 2014 WL 4199214, at *12 (Bankr. S.D. Ga. Aug. 22, 2014) ("Although the Debtor technically owns several assets, in essence, the Debtor owns a single investment, which is similar to the situation where the Debtor owns a single asset such as an office building.").

[16] However, the Court notes Lufkin conceded he signed the Termination and Rescission Agreement, and, although he did not believe it was valid, never told anyone:

    Q: (by Mr. Garfield) So you're sitting there on a closing signing the document
    that says if I don't pay this gets undone. But thinking in your head, this isn't

and it was prevented from completing adequate due diligence as to the EPS Entities.[17] In addition, eFusion states it faces potential tax liability arising from the sale, and contends Dorsey and McCann may have fraudulently concealed information about the EPS Entities. However, all of these issues directly connect to the dispute between eFusion and the Movants over the control and ownership of the EPS Entities. Even Lufkin's assertion he will try to reduce the purchase price of the EPS Entities through the bankruptcy process, as well as his acknowledgment of debt owed on the notes to Dorsey and McCann, arise from this dispute. Moreover, any action eFusion proposes in the bankruptcy proceeding, other than curing its failure to file operating reports with the UST, depends on the state court action, in some form, resolving the dispute between buyer eFusion on one side and sellers Dorsey and McCann on the other side. Therefore, the Court finds this case constitutes a two-party dispute.

### 4. *EFusion has no ongoing business or employees.*

Absent a state court finding as to the ownership and control of the EPS Entities, eFusion has no ongoing business. The parties stipulated eFusion has no employees. Moreover, at the time of the petition, there were no pending lawsuits against eFusion.

### 5. *EFusion lacks a reasonable possibility of reorganization within a reasonable time.*

As described above, eFusion cannot be in a position to file a plan of reorganization, or a plan of liquidation, without resolution of the issue of the ownership of its one claimed group of assets.[18] eFusion's Chapter 11 case is based entirely on the hope it will win control of the EPS Entities in the state

---

binding on me, right?
A: (by Mr. Lufkin) That's correct.
Q: Did you tell anyone there that you thought you were signing something that you didn't think it was valid?
A: Nope.

Transcript of July 16, 2014, p. 151, line 21 – p. 152, line 2.

[17] eFusion did not require additional information before entering into the SPA and the other agreements, and eFusion has presented no evidence to indicate it was forced to enter into those agreements. Rather, Mr. Lufkin, an experienced businessman, made the decision to engage in the purchase transaction in the absence of information he now contends he needed.

[18] Although Lufkin testified there are possible collection actions eFusion could bring, it appears any such actions would be de minimis compared to the underlying question of ownership of the EPS Entities.

court litigation–litigation from which this Court has determined it should abstain.

Moreover, eFusion has not shown the current posture of the state court litigation will result in a determination of its asserted rights in any particular time frame. Rather, eFusion is depending upon the plaintiff in the state court case, against whom eFusion asserts it also has claims, to take action to bring eFusion and the Movants here into the case.

Although eFusion may eventually achieve success in the state court litigation and possess the ability to propose a Chapter 11 plan, there is no evidence as to when such a plan could be expected, nor as to the provisions such a plan would contain. According to McCann, he and Dorsey would not vote in favor of any reorganization plan proposed by eFusion, and do not want to do business with eFusion in any way.[19] Therefore, eFusion's assertions as to reorganization of the EPS Entities are purely speculative at this time.

For these reasons, the Court finds eFusion's Chapter 11 case was filed in bad faith, and should be dismissed or converted for cause under § 1112(b).

**B.    Dismissal is More Appropriate than Conversion**

If cause is found, this Court must make an independent determination whether dismissal or conversion is in the best interests of the estate.[20] While there is no "bright line test" for such a determination, Judge Tallman of this court has noted: "The interests of individual creditors are protected by the requirement that a court examine the best interests of the estate. The focus of that test is upon the economic value of the debtor; it compares the economic value of the debtor in a converted case to its value after dismissal."[21]

In this case, there is no benefit to the estate or creditors from conversion to Chapter 7. Such an action would merely substitute a Chapter 7 Trustee as one party in a two-party dispute, and force the Trustee to administer an estate with no resources but with pending litigation. The interests of all parties will be best served in this case by dismissal of the proceeding, allowing the determination of this two-party dispute to proceed in the state court.

---

[19] Transcript of July 16, 2014, p. 58, lines 13–25 (testimony of Mr. McCann).

[20] *See In re BH S & B Holdings*, 439 B.R. 342, 346 (Bankr. S.D. N.Y. 2010)

[21] *In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006) (citing *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1992) ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. The estate is defined in terms of interests in property.")).

**C.      Dismissal Under § 305.**

Section 305 provides in part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if … the interests of creditors and the debtor would be better served by such dismissal or suspension[.]
. . .

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28.[22]

This Court has previously recognized the inquiry under § 305 is conducted on a case-by-case basis, addressing the unique circumstances of each case:

"[A] bankruptcy court is not bound by a prescriptive template; it may consider any factors it deems relevant to the determination of whether it is in the best interests of the parties to the suit to seek dismissal. Reasoned judgment based on articulated facts is the only test which the statute itself requires."[23]

In *Spade*, for example, the United States District Court for the District of Colorado approved the bankruptcy court's consideration of the following factors in finding the interests of the creditors and debtor would be better served by dismissal: 1) the motivation of the parties seeking bankruptcy jurisdiction; 2) the availability of another forum; 3) the economy and efficiency of administering the case in the bankruptcy court; and 4) prejudice to the parties due to keeping the case in bankruptcy court.[24]

---

[22] 11 U.S.C. § 305(a)(1) and (c).  Pursuant to § 305(c), therefore, an order of this Court under § 305(a) may be reviewed by a District Court or Bankruptcy Appellate Panel, but not by the Court of Appeals or the Supreme Court of the United States. *See In re Schueller*, 126 B.R. 354, 357-58 (D. Colo. 1991) (citing *Chemical Bank v. Togut (In re Axona Int'l Credit & Commerce Ltd.*, 924 F.2d 31, 35 (2nd Cir. 1991)).

[23] *In re First Assured Warranty Corp.*, 383 B.R. 502, 530 (Bankr. D. Colo. 2008) (quoting *In re Spade*, 269 B.R. 225, 228 (D. Colo. 2001)).

[24] *Spade* at 228-229.

Similarly, the United States Bankruptcy Court for the District of New Mexico considered the following factors in determining whether to dismiss or suspend a case:  1) economy and efficiency of administration; 2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; 3) whether federal proceedings are necessary to reach a just and equitable solution; 4) whether there is an alternative means of achieving an equitable distribution of assets; 5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; 6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and 7) the purpose for which bankruptcy jurisdiction is sought.[25]

In this case, the Court finds the following factors relevant pursuant to § 305(a).  First, eFusion, through its principal, indicated the motivation for seeking bankruptcy jurisdiction arose from a desire to reduce the price eFusion agreed to pay for the EPS Entities.[26]  A close evaluation of the circumstances for this debtor would have revealed a successful Chapter 11-whether a reorganization plan, a liquidating plan, or a sale of assets—could not be accomplished in the absence of the resolution of eFusion's dispute with Dorsey and McCann.  Accordingly, this factor (*Spade* Factor 1 and *Picacho* Factor 7) weighs in favor of dismissal.

Second, in the absence of resolution of the pending state court action, keeping the Chapter 11 proceeding in this Court creates additional unnecessary expense for the parties, and additional unnecessary administrative burden for the Court.  Therefore, this factor (*Spade* Factors 3 and 4, *Picacho* Factor 1) supports dismissal or abstention.

Third, this Court abstained from eFusion's Adversary Proceeding for determination of those issues between the parties in the state court, where a proceeding is already pending.  Therefore, the parties have another, more appropriate, forum available, and have no need of federal jurisdiction to resolve their claims.  Accordingly, this factor (*Spade* Factor 2, *Picacho* Factors 2 and 3) also supports dismissal or abstention.

As to *Picacho* Factors 4, 5, and 6 the Court has heard no evidence to indicate whether the parties could work out an alternative method of asset distribution or an out-of-court settlement.  In addition, there is no evidence of a

---

[25] *In re Picacho Hill Utility Co., Inc.*, 3013 WL 1788298, at *9 (Bankr. D. N.M. April 26, 2013) (Slip Copy) (citing, *inter alia*, *Spade* at 225).

[26] Transcript of July 16, 2014, p. 127, lines 14-24 (testimony of Lufkin).

non-bankruptcy insolvency proceeding such as a receivership. Therefore, these factors do not apply to this case.

As a practical matter, this case arises out of state court claims based on the sale of the EPS Entities. If eFusion obtains a resolution in its favor, and reorganization of its affairs is then necessary, there is no bar prohibiting eFusion from filing a new Chapter 11 case. For this reason, the Court further finds dismissal, rather than abstention, best serves the interest of the Debtor and the creditors in this case.

## CONCLUSION

For the reasons stated above

IT IS HEREBY ORDERED the Motion to Dismiss is granted, and the above-captioned Chapter 11 case is dismissed pursuant to § 1112(b) and § 305(a).

Dated October 16, 2014          BY THE COURT:

_____
Hon. Michael E. Romero, Chief Judge
United States Bankruptcy Court